# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 24-1174V**

| | |
|---|---|
| ERIC RUFFO,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: October 7, 2026 |

*John Robert Howie, Howie Law, PC, Dallas, TX, for Petitioner.*

*Nathaniel Trager, U.S. Department of Justice, Washington, DC, for Respondent.*

**DECISION AWARDING DAMAGES**[1]

On July 31, 2024, Eric Ruffo filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered from a shoulder injury related to vaccine administration ("SIRVA") due to an influenza ("flu") vaccine administered on October 14, 2022. Petition at 1, ECF No. 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters, and although Respondent ultimately conceded entitlement, the parties could not informally resolve damages.

For the reasons set forth below, I find that Petitioner is entitled to compensation in the amount of **$108,000.00, for actual pain and suffering, plus $7,741.97 for past unreimbursed expenses, for a total of $115,741.97.**

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Special masters may consider prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in a specific case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may also rely on my own experience adjudicating similar claims.[3] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Hum. Servs.*, 109 Fed. Cl. 579 (2013).

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussions in Section II of *Pello v. Sec'y of Health*

[3] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

& *Hum. Servs*., No. 24-1896V, 2026 WL 2211341, at *2-3 (Fed. Cl. Spec. Mstr. July 14, 2026).

## II. The Parties' Arguments

The parties agree Petitioner should be awarded $7,741.97 for past unreimbursed expenses. *See* Br. at 2; *see also* Resp. at 2, n.1. Thus, the only area of disagreement is the amount of compensation which should be awarded for actual pain and suffering. Petitioner seeks $108,000.00 (Br. at 2), while Respondent proposes an award "consistent with previous moderate-to-severe cases – and lower than prior surgery awards[,]" thus seeming to propose a range from $76,000.00 to $110,000.00 (Resp. at 2, 10-11).

In defense of his proposed award, Petitioner describes his course of treatment, noting his decision to seek "immediate[]" treatment within approximately 13 days of vaccination, and the fact that his treatment course persisted for just over six months but resulted in surgery nevertheless. Br. at 16. He also relies on the fact that he underwent diagnostic procedures, including x-rays and an MRI (showing rotator cuff tendonitis and/or a strain with a full-thickness tear through the conjoined tendon region posteriorly, small glenohumeral joint effusion and moderate subacromial/subdeltoid bursitis, and mild acromioclavicular hypertrophic arthropathy with asymmetric distal clavicle marrow edema). *Id.* In addition, Petitioner emphasizes that his course of treatment included one subacromial steroid injection, one Depomedrol injection, two Toradol injections, prescription medications (Meloxicam, cyclobenzaprine, oral steroids), and, when conservative treatment failed, an arthroscopic surgery (with rotator cuff repair, subacromial decompression and debridement, and acromioplasty), followed by 14 post-operative sessions of physical therapy ("PT"). *Id.* at 16-17. Petitioner also relies on his pre-surgery level of pain (rated at a 5/10) and his post-surgery pain rated at a 0-5/10, in support of his proposed sum. *Id.* at 17.

Aside from his medical treatment, Petitioner also relies on other "non-medical compounding damages" factors in support of his requested award. Br. at 17. Petitioner was employed (as a facility and safety manager) at a manufacturer of air conditioners for hot rods and custom cars – a position involving physically-demanding tasks. *Id.* Petitioner explains that as a result of his injury, he must now rely on his co-workers to perform most of his tasks. *Id.* And, when Petitioner does not have the assistance of his co-workers, he is forced to push through "considerable" pain. *Id.* at 17-18.

Thus, Petitioner favorably compares the duration and severity of his medical treatment with what was experienced by the petitioners in *Selling, Vaccaro, Knudson,* and

*Cates,*[4] cases featuring past pain and suffering awards ranging from $105,000.00 to $110,000.00. Br. at 18-29. He insists that his injury and treatment course warrant a roughly equivalent award. *See id*.

Respondent, by contrast, argues that Petitioner's SIRVA, though "moderate-to-severe," was nevertheless a "milder surgery case." Resp. at 7, 13. Respondent addresses cases cited by Petitioner, and asserts that Petitioner's reported pain levels were lower than those petitioners in the cases he relies upon for support. *Id.* at 12-13. As guidance, Respondent *briefly* cites several other decisions featuring pain and suffering awards ranging from $76,000.00 to $110,000.00, respectively – *Edgerson-Briggs, Eichorn, Hunt, Shields, Langdon, Felland, Davidson,* and *Yodowitz.*[5] *Id.* at 10-11.

On reply, Petitioner asserts that Respondent "has made zero effort to compare and contrast any cases to this Petitioner's case[,]" as he merely "present[ed] a few of the most basic facts from a handful of cases and dismiss[ed] the decisions cited by Petitioner." Reply at 2. Petitioner argues that Respondent's efforts to compare the facts of Petitioner's case to non-surgical SIRVA cases is "wasted." *Id.* at 8. He also notes that in some of the cases relied upon by Respondent, an amount of $110,000.00 was awarded for past pain and suffering; thus, Petitioner argues his requested amount "falls squarely within Respondent's recommended range for surgery cases." *Id.* at 3. As added support for his requested sum, Petitioner further favorably compares his factual circumstances to those in *McClelland v. Sec'y of Health & Hum. Servs.*, No. 24-605V, 2025 WL 1542018 (Fed. Cl. Spec. Mstr. Apr. 30, 2025) (awarding $105,000.00 for past pain and suffering).

---

[4] *Selling v. Sec'y of Health & Hum. Servs.*, No. 16-0588V, 2019 WL 3425224 (Fed. Cl. Spec. Mstr. May 2, 2019) (awarding $105,000.00 for past pain and suffering); *Vaccaro v. Sec'y of Health & Hum. Servs.,* No. 19-1883V, 2022 WL 662550 (Fed. Cl. Spec. Mstr. Feb. 2, 2022) (awarding $110,000.00 for past pain and suffering); *Knudson* v. *Sec'y of Health & Hum. Servs.,* No. 17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 for past pain and suffering); and *Cates v. Sec'y of Health & Hum. Servs.*, No. 18-0277V, 2020 WL 3751072 (Fed. Cl. Spec. Mstr. June 5, 2020) (awarding $108,000.00 for past pain and suffering).

[5] *Edgerson-Briggs v. Sec'y of Health & Hum. Servs.,* No. 21-2054V, 2024 WL 3416078 (Fed. Cl. Spec. Mstr. June 4, 2024) (awarding $77,000.00 for past pain and suffering); *Eichorn v. Sec'y of Health & Hum. Servs.,* No. 20-154V, 2023 WL 8525127 (Fed. Cl. Spec. Mstr. Nov. 7, 2023) (awarding $78,000.00 for past pain and suffering); *Hunt v. Sec'y of Health & Hum. Servs.,* No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022) (awarding $95,000.00 for past pain and suffering); *Shields v. Sec'y of Health & Hum. Servs.,* No. 20-1970V, slip op. (Fed. Cl. Spec. Mstr. Nov. 26, 2024) (awarding $95,000.00 for past pain and suffering); *Langdon v. Sec'y of Health & Hum. Servs.,* No. 20-1311V, 2023 WL 3411103 (Fed. Cl. Spec. Mstr. May 12, 2023) (awarding $99,000.00 for past pain and suffering); *Felland v. Sec'y of Health & Hum. Servs.,* No. 20-406V, 2022 WL 10724100 (Fed. Cl. Spec. Mstr. Sept. 6, 2022) (awarding $100,000.00 for past pain and suffering); *Davidson v. Sec'y of Health & Hum. Servs.,* No. 20-1617V, 2024 WL 1152539 (Fed. Cl. Spec. Mstr. Feb. 8, 2024) (awarding $110,000.00 for past pain and suffering); and *Yodowitz v. Sec'y of Health & Hum. Servs.,* No. 21-370V, 2024 WL 4284926 (Fed. Cl. Spec. Mstr. Aug. 23, 2024) (awarding $110,000.00 for past pain and suffering).

## III. Appropriate Compensation for Petitioner's Past Pain and Suffering

In this case, awareness of the injury is not disputed. Petitioner was a competent adult with no impairments that would impact his consciousness of his injury. Therefore, I analyze principally the severity and duration of the injury. When performing this analysis, I review the record as a whole, including the medical records and declarations filed, and all assertions made by the parties in written documents.[6]

The record shows that following his vaccination, Petitioner (age 50 at the time) suffered a moderately severe SIRVA causing him to report shoulder-related symptoms within approximately two weeks after vaccination, and to seek consistent treatment for approximately six months thereafter. He first sought care for left shoulder pain linked to the subject vaccination (with a visit to urgent care) on October 27, 2022, resulting in an assessment specific to the left shoulder, including deltoid tendonitis. Ex. 7 at 3-5. Petitioner then received steady treatment for his left shoulder until May 4, 2023 (thus for a total of six months and 20 days), with some residual symptoms common in SIRVA claims thereafter (i.e., strength limitations). *See,* e.g., Ex. 9 at 21-24.

During his nearly seven-month course, Petitioner's treatment for his SIRVA was fairly aggressive and included surgery. Particularly relevant is his treatment with a total of three injections (including one ventrogluteal dexamethasone, one Toradol,[7] and one subacromial steroid injections), x-rays, an MRI,[8] the use of a remedial measures (such as a sling, Voltaren gel, ice, rest, and prescription medications including cyclobenzaprine and prednisone), and participation in a home exercise plan ("HEP"). When conservative measures failed, Petitioner underwent an arthroscopic surgery on February 2, 2023 (thus less than four months post vaccination), that included a rotator cuff repair, arthroscopic acromioplasty, subacromial decompression, and debridement. Ex. 10 at 21. Following surgery, Petitioner attended 14 post-operative PT sessions (through April 26, 2023), and by May of 2023, he was "doing well" and "report[ed] that his pain [was] significantly better" after his course of PT, though he was "still working on strengthening [] his shoulder." *See,* e.g., Ex. 4 at 40.

---

[6] I will note that the parties do not appear to dispute the basic facts concerning Petitioner's treatment severity and duration. *Compare* Br. at 2-14, *with* Resp. at 2-6. They simply could not agree on an appropriate amount for Petitioner's past pain and suffering.

[7] Petitioner appears to argue that he received two Toradol injections (on November 4 and 17, 2022 – Br. at 16, Ex. 1 ¶¶ 6-7); however, the record in fact shows that Petitioner received one Toradol injection on November 17, 2022. Ex. 4 at 18.

[8] Petitioner's treater interpreted the MRI as showing rotator cuff tendinosis and/or strain with oblique full-thickness tear through the conjoined tendon region posteriorly; small glenohumeral joint effusion and moderate subacromial/subdeltoid bursitis; and mild acromioclavicular hypertrophic arthropathy with asymmetric distal clavicle marrow edema that was thought to be an overuse injury. Ex. 8 at 12-13.

Additionally, Petitioner's medical records contain descriptions of his pain on a ten-point scale that stand as evidence of moderate severity. For instance, within the first two months of his October 2022 flu vaccination, Petitioner rated his pain at a 5/10 in severity. *See,* e.g., Ex. 4 at 15, 19 (describing his pain as a 5/10 on November 14 and December 30, 2022). When he began PT following his surgery (on February 16, 2023), he rated his pain at a 4/10, but with a range from 2-8/10. Ex. 11 at 4-5. Petitioner's pain decreased as his treatment with PT progressed (e.g., rating his pain ranging from 0-3/10 in late February and early March of 2023, with the exception of 7/10 following an exacerbation of pain following a work-related injury on March 14, 2023). *Id.* at 8, 16, 18, 20, 22. By Petitioner's final PT visit at the end of April 2023, he described his pain as a 1-2/10. *See id.* at 30. More evidence of a moderately severe injury comes from medical records showing minor range of motion limitations, only – some of which were due to pain. *See,* e.g., Ex. 4 at 15.

Despite the fact that Petitioner's injury was severe enough to warrant arthroscopic surgery, Petitioner's course was relatively swift, with his final orthopedic follow up visit occurring just three months after the procedure, with noted improvement. Ex. 9 at 21-24. I will also note that while Petitioner's arthroscopic procedure included a repair of the type of injuries commonly seen in the setting of SIRVA claims (i.e., subacromial decompression and debridement to address his subacromial/subdeltoid bursitis), the surgery also addressed his rotator cuff tear. Ex. 8 at 12-13. This is the kind of degenerative, comorbid shoulder issue not understood to be vaccine-caused. *See,* e.g., *Lang v. Sec'y of Health & Hum. Servs.,* No. 17-995V, 2020 WL 7873272, at *12-13 (Fed. Cl. Spec. Mstr. Dec. 11, 2020) (emphasizing that "findings consistent with impingement, rotator cuff tears, or [acromioclavicular] arthritis do not *per se* preclude a finding that a Table SIRVA exists," rather the question is whether the petitioner's "shoulder pathology wholly explain[ed] her symptoms independent of vaccination."). Nonetheless, the fact that Petitioner underwent an arthroscopic surgery at all, and so close in time to onset, is evidence of a more severe vaccine injury than in many cases.

In addition, the contemporaneous medical records support the statements made in Petitioner's declarations regarding the implications his vaccine injury had on his activities of daily living ("ADLs") and work as an air conditioning technician to some extent. For instance, Petitioner attested that his significant left shoulder pain interfered with the nature of his work, as it involved "a lot of work with [his] upper extremities." Ex. 1 ¶ 10. He also noted that he "details cars for a living," and "has a very difficult time holding [the] buffer[,]" as his "left arm is considerably weaker than [his] right," so activities above chest level are "extremely difficult . . . due to weakness." *Id.* ¶ 23. To that end, Petitioner's treating orthopedist documented that Petitioner's shoulder pain caused "pain with certain activities" and that his work "require[d] a lot of upper extremity work." Ex. 4 at 70. This entry thus provides slight support for an injury that interfered with the use of Petitioner's left arm in the employment context to some degree. And, Petitioner's PT records

corroborate Petitioner's assertions that his vaccine injury interfered with his ability to sleep comfortably. *Compare* Ex. 1 ¶ 17 and Ex. 15 ¶ 5, *with* Ex. 11 at 12.

Petitioner's supplemental declaration (drafted in support of his Brief on Damages, in March 2025), describes in detail the implications his injury had on his work – but these details are not corroborated by the contemporaneous medical records. Petitioner explains that in his role as a facility and safety manager, he is responsible for overhead repairs, repairing air lines, and running overhead cables through rafters. Ex. 15 ¶¶ 2-3. As a result of his left shoulder weakness, he now requires assistance from co-workers; if his co-workers are not available, Petitioner endures a "significant amount of pain" doing the tasks himself. *Id.* He also now declines projects on "paint correction" on taller vehicles, such as SUVs, because he does not have the shoulder strength to stably hold the buffer. *Id.* ¶ 4. In addition, Petitioner generally describes difficulties with playing with his grandkids, bathing his dog, changing his car oil, hunting, driving, painting, and carrying liquid chlorine in his role to care for the public water system. *Id.* ¶¶ 6-10. This evidence, though supplied later in the course of the pendency of this case, is appropriately deserving of some (albeit minimal) weight in an assessment of an appropriate pain and suffering award here.

Respondent's offered comparable cases awarding less than $100,000.00 for pain and suffering[9] are largely inapplicable. *See,* e.g., *Hunt v. Sec'y of Health & Hum. Servs.,* No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022). *Hunt,* as has previously been noted, stands as an "outlier determination[], and rare instance[] of deviating from the above $100,000.00 'norm' for SIRVA cases involving surgery." *Laurette v. Sec'y of Health & Hum. Servs.*, No. 19-1047V, 2024 WL 1741611, at *5 (Fed. Cl. Spec. Mstr. Mar. 25, 2024); *see also,* e.g., *Olson v. Sec'y of Health & Hum. Servs.*, No. 21-0408V, 2024 WL 1521634, at *4 (Fed. Cl. Spec. Mstr. Mar. 4, 2024); *Gao v. Sec'y of Health & Hum. Servs.*, No. 21-1884V, 2023 WL 6182455, at *3 (Fed. Cl. Spec. Mstr. Aug. 18, 2023) (emphasizing that *Hunt* was a "*sui generis* instance[] of a sub-six figure award in SIRVA cases featuring surgery").

It is instead the case that "the policy goals of the Vaccine Program are best served if outcomes in common cases (like SIRVA vaccine injury claims) are predictable and/or subject to some uniformity – and it has been my determination that surgery cases

[9] *Edgerson-Briggs v. Sec'y of Health & Hum. Servs.,* No. 21-2054V, 2024 WL 3416078 (Fed. Cl. Spec. Mstr. June 4, 2024) (awarding $77,000.00 for past pain and suffering); *Eichorn v. Sec'y of Health & Hum. Servs.,* No. 20-154V, 2023 WL 8525127 (Fed. Cl. Spec. Mstr. Nov. 7, 2023) (awarding $78,000.00 for past pain and suffering); *Hunt v. Sec'y of Health & Hum. Servs.,* No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022) (awarding $95,000.00 for past pain and suffering); *Shields v. Sec'y of Health & Hum. Servs.,* No. 20-1970V, slip op. (Fed. Cl. Spec. Mstr. Nov. 26, 2024) (awarding $95,000.00 for past pain and suffering); and *Langdon v. Sec'y of Health & Hum. Servs.,* No. 20-1311V, 2023 WL 3411103 (Fed. Cl. Spec. Mstr. May 12, 2023) (awarding $99,000.00 for past pain and suffering).

reasonably present a degree of suffering justifying a six-figure award. (Otherwise, adjustments are always considered and made to account for the facts of each case, and in some instances even SIRVA surgery cases result in lower pain and suffering awards)." *Richardson v. Sec'y of Health & Hum. Servs.*, No. 20-0674V, 2023 WL 6180813, at *8 (Fed. Cl. Spec. Mstr. Aug. 16, 2023). Petitioner's SIRVA was not so exceptionally moderate to warrant a departure below the six-figure norm for injuries leading to surgery (and certainly not even lower such that it might fit Respondent's lowest proposal of $76,000.00).

The cases cited by Respondent in which a range of $100,000.00 to $110,000.00 was awarded for actual pain and suffering (*Felland, Davidson,* and *Yodowitz*)[10] provide more useful factual comparisons (and actually encompasses Petitioner's requested sum of $108,000.00). I will note, however, Respondent has mostly failed to fully analogize the facts of those cases to the circumstances presented here in Petitioner's case. *See generally,* Resp. at 11. Instead, Respondent highlights some limited circumstances concerning those petitioners' physical examinations and "treatment/prognosis." *See id.* I have previously cautioned Respondent that if it becomes his practice to simply refuse Petitioner's proposal and fail to propose, and/or attempt to defend, what he deems an appropriate award to be, "it will become far more likely that, absent circumstances specific to the case before me, [p]etitioner will simply receive what is demanded." *M.F. v. Sec'y of Health & Hum. Servs.,* No. 21-0970V, 2024 WL 1483601, at *6, n.13 (Fed. Cl. Spec. Mstr. Feb. 15, 2024).[11]

Here, although Respondent has failed to adequately defend his proposed range of awards, I find that Petitioner deserves slightly less than the $110,000.00 awarded in some of the cases he cited for support. For example, the *Yodowitz* petitioner appears to have experienced a more severe injury than Mr. Ruffo, since that individual sought care within just three days of vaccination and received consistent treatment for 18 months (although

[10] *Felland v. Sec'y of Health & Hum. Servs.,* No. 20-406V, 2022 WL 10724100 (Fed. Cl. Spec. Mstr. Sept. 6, 2022) (awarding $100,000.00 for past pain and suffering); *Davidson v. Sec'y of Health & Hum. Servs.,* No. 20-1617V, 2024 WL 1152539 (Fed. Cl. Spec. Mstr. Feb. 8, 2024) (awarding $110,000.00 for past pain and suffering); and *Yodowitz v. Sec'y of Health & Hum. Servs.,* No. 21-370V, 2024 WL 4284926 (Fed. Cl. Spec. Mstr. Aug. 23, 2024) (awarding $110,000.00 for past pain and suffering).

[11] Also in that case, I admonished the same Petitioner's counsel for "[o]verheated rhetoric" and warned him that it is likely to be more distracting than persuasive on the actual merits of the case. *M.F. v. Sec'y of Health & Hum. Servs.,* No. 21-0970V, 2024 WL 1483601, at *6, n.13 (Fed. Cl. Spec. Mstr. Feb. 15, 2024) (citing examples of language used in briefings, including "a hypothetical fairyland," making a comparison to "3rd graders on the playground," and alleging "bald-faced misrepresentations of the evidence.").

I give the same warning here. Petitioner and his counsel are reminded that civility is paramount when pursuing either informal resolution or the Court's formal adjudication of the cases; and the use of exaggerated rhetoric is largely unhelpful. *See,* e.g., Reply at 3 (stating "Respondent, a fan of picking numbers out of thin air . . . ."); *id.* at 4 (stating ". . . because Respondent says so!"); *id.* at 8 (stating "[t]hat is like comparing a filet mignon to a chicken wing.").

some of *Yodowitz's* later course of treatment was deemed unrelated to the original SIRVA). *See* No. 21-370V, 2024 WL 4284926 (Fed. Cl. Spec. Mstr. Aug. 23, 2024). And, the *Davidson* petitioner endured a 30-month course (though with a combined 14-month total gap), which is still considerably longer than Petitioner's comparably short course in this case. *See* No. 20-1617V, 2024 WL 1152539 (Fed. Cl. Spec. Mstr. Feb. 8, 2024).

Petitioner's offered comparable cases, awarding between $105,000.00 and $110,000.00, provide mostly useful comparisons on which to base an appropriate award of pain and suffering in Mr. Ruffo's circumstances. I will note, however, that two of the cases cited by Petitioner (*Selling* and *Knudson*) were decided by other special masters and outside of the SPU. *Selling v. Sec'y of Health & Hum. Servs.*, No. 16-0588V, 2019 WL 3425224 (Fed. Cl. Spec. Mstr. May 2, 2019); *Knudson* v. *Sec'y of Health & Hum. Servs.,* No. 17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018). I thus afford those decisions slightly less weight in assessing an appropriate award in this case, as one of the intended goals of SPU is to promulgate a body of law that is applicable to similarly-situated SIRVA claimants.

*Cates v. Sec'y of Health & Hum. Servs.* (awarding his requested amount of $108,000.00) is a particularly compelling comparable.[12] *See* No. 18-0277V, 2020 WL 3751072 (Fed. Cl. Spec. Mstr. June 5, 2020). The *Cates* petitioner sought care within eleven days of vaccination and treated for approximately six-and-a-half months, with a mostly full recovery – thus nearly equivalent to the immediacy and duration of Mr. Ruffo's treatment. More so, the *Cates* petitioner's course of treatment included one arthroscopic surgery, one steroid injection, and 28 sessions of PT (with both pre- and post-operative courses). Although that individual attended double the amount of PT compared to Mr. Ruffo, the *Cates* petitioner received two less injections than Petitioner in this case. Thus, the severity of Petitioner's injury is akin to that in *Cates*. Finally, the *Cates* petitioner, like Mr. Ruffo, established that the vaccine injury caused difficulties with sleeping, playing with children, and engaging in recreational activities. Thus, I find an equivalent award is appropriate in this case for an otherwise moderately severe surgical SIRVA that mostly resolved.

**Taking all of the foregoing into consideration, I find that $108,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**

---

[12] While Respondent argues that the analysis in this case should not be the basis on which I assess an appropriate award for Petitioner because it involved a "truncated decision," I am not persuaded by this argument. *See* Resp. at 13. Rather, the full oral reasoning (and thus transcript) of the award passed down during the Motion's Day proceeding in that case was incorporated by reference and thus forms the exact type of basis on which to inform awards for similarly-situated SIRVA claimants in the expedited SPU.

## CONCLUSION

In light of all of the above, I award **Petitioner a lump sum payment of $115,741.97**, **(representing compensation for actual pain and suffering and past unreimbursed expenses) to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[13]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.